985 F.2d 576
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES Of America, Plaintiff-Appellee,
v.
Russell Neil SCOTT, Defendant-Appellant.
 No. 92-10112.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 15, 1992.
Decided Jan. 22, 1993.
 
 Appeal from the United States District Court for the District of Arizona; No. CR 91-202-PHX-SMM; Stephen M. McNamee, District Judge, Presiding.
 D.Ariz.
 AFFIRMED.
 Before GOODWIN, O'SCANNLAIN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant/Appellant Russell Neil Scott ("Scott"), an American Indian, appeals his jury conviction on seven counts of aggravated sexual abuse of an American Indian child under the age of twelve within the confines of the Colorado River Indian Reservation, in Parker, Arizona. Scott also appeals various aspects of his sentence of life imprisonment under the Sentencing Guidelines. We affirm.
 
 DISCUSSION
 A. Voluntary Intoxication Instruction
 
 3
 Scott argues that the district court erred by instructing the jury that Scott's voluntary intoxication was not to be considered as a defense to the charged offenses[1] because one of the counts, Count 3, charged him with a specific intent crime. "Whether a jury instruction misstates the applicable law is a legal question we review de novo." United States v. Lopez, 885 F.2d 1428, 1433 (9th Cir.1988), cert. denied, 492 U.S. 1032 (1990).
 
 
 4
 Voluntary intoxication may be a defense to a specific intent crime, but not a general intent crime. United States v. Jim, 865 F.2d 211, 212 (9th Cir.), cert. denied, 110 S.Ct. 93 (1989); see also United States v. Sneezer, 900 F.2d 177, 179 (9th Cir.1990). Because Count 3 alleged a crime which requires specific intent, the district court's broad instruction was not legally correct. We nonetheless hold that the error does not require reversal. Scott's counsel did not request a correct instruction on the limited effect of voluntary intoxication in specific intent cases, nor did he argue voluntary intoxication as a defense. The district court could have cured the defects in his instruction by narrowing its scope to include only the six general intent counts, but Scott's counsel failed to call the error to his attention. Additionally, the error in this case is rendered harmless beyond a reasonable doubt because there was no evidence of intoxication on the day in which the specific intent crime was committed. See United States v. Rubio-Villareal, 967 F.2d 294, 296-97 (9th Cir.1992) (harmless error test applies to erroneous jury instructions).
 
 
 5
 B. Definition of the Term "Sexual Act"
 
 
 6
 We reject Scott's argument that the district court improperly instructed the jury on the elements of aggravated sexual abuse by incorrectly defining the term "sexual act" under 18 U.S.C. § 2241(c). Whether a jury instruction misstates elements of a statutory crime is a question of law reviewed de novo. United States v. Belgard, 894 F.2d 1092, 1095 (9th Cir.), cert. denied, 110 S.Ct. 164 (1990).
 
 
 7
 Section 2241(c) is a statutory rape statute, requiring only that the defendant knowingly engage in a "sexual act" with an individual under the age of twelve. The term "sexual act" is then defined in 18 U.S.C. § 2245(2). The district court's instructions to the jury correctly defined the term "sexual act" in all seven counts in the indictment. Scott's argument fails to grasp the clear statutory distinction between the definitional use of the word "contact" in § 2245(2), and the term "sexual contact" as defined by § 2245(3) and used in § 2244. In fact, Scott ignores the statute's plain language clearly defining "contact" under § 2245(2) as distinct from § 2245(3)'s definition of "sexual contact."
 
 
 8
 C. Variance Between the Indictment and the Evidence
 
 
 9
 Scott argues that there was a fatal variance between the indictment and the proof at trial as to Counts 1, 4 and 5, since the indictment alleged only "contact between the penis and the vulva," but the convictions were based on jury instructions referring to "penetration however slight." A variance occurs when the evidence offered at trial proves facts materially different from those alleged in the indictment. United States v. Homick, 964 F.2d 899, 907 (9th Cir.1992); United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir.1984). "A variance requires reversal only when the defendant was prejudiced thereby." United States v. Alvarez, 972 F.2d 1000, 1004 (9th Cir.1992). We reject Scott's argument because the evidence proved the facts alleged in the indictment, and more.
 
 
 10
 The indictment here properly charged Scott with aggravated sexual abuse under 18 U.S.C. § 2241(c). A defendant violates § 2241(c) when the defendant (1) knowingly engages in a sexual act (2) with a victim who has not attained twelve years of age. The government's complaint properly alleged these elements.
 
 
 11
 The indictment does define the various "sexual acts" in a slightly different way than the jury instructions: Counts 1, 4 and 5 in the indictment refer to "contact between the penis and the vulva" while the jury instructions go on to further define "contact" using the § 2245(2) phrase "penetration however slight." This slight difference, however, hardly constitutes a prejudicial fatal variance. In fact, Scott fails to specify exactly how he was prejudiced. Close scrutiny of his claim reveals that no such prejudice is possible because "penetration however slight" necessarily exists as a subcategory within the broader category of "contact between the penis and the vulva."
 
 
 12
 D. The District Court's Comments Following The Victim's Emotional Outburst
 
 
 13
 We reject Scott's claim that certain comments made by the district court after an emotional outburst by the victim during cross-examination were inappropriate and prejudicial, and that a mistrial should have been declared. The district court has broad discretion in supervising trials, and generally, judicial behavior during trial justifies reversal only upon an abuse of discretion. United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988), cert. denied, 492 U.S. 906 (1989). Here, however, Scott did not object to the district court's comments nor move for a mistrial on the basis of those comments; he only objected to the victim's outburst itself as grounds for a mistrial. We therefore review only for plain error. See United States v. Sanchez-Lopez, 879 F.2d 541, 551-53 (9th Cir.1989) ("none of the appellants objected to the court's comments nor made a motion for a mistrial. Accordingly, we may review the claim of judicial misconduct for plain error.") (emphasis added).
 
 
 14
 The comments at issue were made after the victim began to cry during cross-examination and was escorted screaming from the courtroom by her mother. The district court expressed concern about the outburst and considered defense counsel's motion for a mistrial. Rather than declaring a mistrial, however, the district court gave the jury a limiting instruction to which Scott did not object. Scott now argues that this instruction was improper and prejudicial because: (1) the district court was, in effect, testifying as an expert witness; and (2) the district court invaded the province of the jury by instructing them to ignore the outburst in assessing her demeanor because such outbursts "sometimes occur." We find these arguments unpersuasive.
 
 
 15
 First, the comments at issue here were not improper, but instead fell within the bounds of proper discretion. The district court was not "testifying as an expert witness," but instead commenting on the evidence in an impartial, fair and legally permissible manner. A judge may properly comment upon the evidence and express an opinion on the facts "as long as the judge makes it clear to the jury that all matters of fact are submitted for their determination." United States v. Sanchez-Lopez, 879 F.2d 541, 553 (9th Cir.1989) (giving parenthetical explanation of Quercia v. United States, 289 U.S. 466, 469 (1933)). Here, the district court's instruction clearly and repeatedly informed the jury that they are the ones who decide whether the outburst affects the victim's credibility.
 
 
 16
 Second, the district court's comments here differ markedly from the types of comments made in the cases on which Scott relies. See, e.g., Quercia, 289 U.S. 466 (trial judge instructed the jury that defendant testimony was untruthful because he wiped his hands while testifying, and such conduct "is almost always an indication of lying."); United States v. Murdock, 290 U.S. 389 (1933) (trial judge commented to the jury that, in his opinion, the defendant was guilty beyond a reasonable doubt). But even if Judge McNamee's comments were inappropriate, they were harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 22-24 (1967); see also United States v. Paiva, 892 F.2d 148, 159 (1st Cir.1989).
 
 
 17
 The record further does not reveal any "actual bias" on the part of the district court, nor does it leave "an abiding impression that the jury perceived an appearance of advocacy or partiality." See Laurins, 857 F.2d at 537 ("A judge's participation justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality."); see also United States v. Mostella, 802 F.2d 358, 361-62 (9th Cir.1986). The record here reveals no improper judicial conduct; rather, it shows that the district court was sensitive to the legitimate rights of both the victim and the defendant. We conclude that Scott has failed to demonstrate that the district court's comments constituted plain error.
 
 E. In Camera Hearing
 
 18
 Scott broadly argues that his constitutional rights were violated when the district court held an in camera, ex parte hearing the morning of sentencing for the limited purpose of determining whether the victim or her mother had recanted their testimony, as Scott had alleged, and if the victim's mother needed to be represented by appointed counsel at the afternoon hearing. We reject Scott's arguments that he was denied his right to a public trial, his own right to be present, and his right to counsel at the hearing.
 
 1. Right to a Public Trial
 
 19
 Scott's argument that he was denied his Sixth Amendment right to a public trial by the district court's in camera hearing ignores the fact that the proceeding at issue was not "a trial," but was instead a limited post-conviction hearing on the very narrow question whether the victim's mother needed to be represented by counsel at the afternoon hearing. Even if the district court erred in not excluding the government from the in camera hearing, that error was clearly harmless beyond a reasonable doubt.
 
 2. Defendant's Right to be Present
 
 20
 Scott claims that because he was not himself present at the in camera hearing, he was denied his right to "be in the courtroom at every stage of his trial." Illinois v. Allen, 397 U.S. 337, 338 (1970). Scott overstates the law and misstates the facts. Scott did not have an unfettered right to be present at the in camera hearing. See United States v. Veatch, 674 F.2d 1217, 1225-26 (9th Cir.1981) (defendant's right to be present is not absolute and, absent a showing of prejudice, his absence does not require reversal), cert. denied, 456 U.S. 946 (1982); United States v. Polizzi, 550 F.2d 1133, 1137 (9th Cir.1976) ("Due process does not assure 'the privilege of presence when presence would be useless, or the benefit but a shadow.' " (quoting Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934)). In fact, Scott cites no authority supporting his claimed right to be present at a post-conviction hearing where the only issue involved the rights of others.
 
 
 21
 Scott's claimed right to be present under Federal Rule of Criminal Procedure 43 is also unsupported. Rule 43 provides defendants with the right to be present "at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence." Fed.R.Crim.P. 43. Scott cites no authority for extending his Rule 43 rights to a proceeding like the one at issue here. But even if Scott did have a right to be present at the in camera hearing, he effectively waived that right by failing to assert it. See United States v. Gagnon, 470 U.S. 522, 528-29 (1985).
 
 3. Right to Counsel
 
 22
 Scott broadly argues he was denied his right to counsel at the in camera, ex parte hearing, citing United States v. Bohn, 890 F.2d 1079 (9th Cir.1989) and United States v. Thompson, 827 F.2d 1254 (9th Cir.1987). Neither case supports his claim.
 
 
 23
 While the Sixth Amendment "is violated whenever 'the accused is denied counsel at a critical stage of his trial,' " Bohn, 890 F.2d at 1080 (quoting United States v. Cronic, 466 U.S. 648, 659 (1984)), the event at issue here does not constitute a "critical stage of his trial." This court looks to three factors which the Supreme Court has identified in determining whether an event is "a critical stage" triggering the right to counsel: (1) "if failure to pursue strategies or remedies results in a loss of significant rights;" (2) "where skilled counsel would be useful in helping the accused understand the legal confrontation;" and (3) "if the proceeding tests the merits of the accused's case." Menefield v. Borg, 881 F.2d 696, 698-99 (9th Cir.1989); Bohn, 890 F.2d at 1080-81. Application of this test reveals that the hearing here was not a "critical stage" of Scott's trial.
 
 
 24
 First, Scott fails to show how he was forced to alter his strategies or how lack of counsel at the short in camera hearing resulted in a loss of significant rights. In fact, at the afternoon hearing a few hours after the in camera hearing, Scott had a full opportunity to ask questions of the witness but failed to do so. The record reveals that the only conclusion reached at the morning hearing was that the victim's mother did not need to be represented by counsel at the afternoon hearing. Second, there is no indication that defense counsel's presence at the morning hearing would have been useful. Both counsel and the defendant were present at the afternoon hearing which repeated the morning proceedings in a virtually identical manner. Third, the short in camera hearing did not test the merits of the case, but was instead conducted for the limited purpose of determining whether the witnesses needed to be represented by counsel at the afternoon hearing. Cf. Bohn, 890 F.2d at 1081 (in camera hearing to assess the validity of defendant's fifth amendment claim, the key issue in the case, was a critical stage in the proceedings). Thus, the in camera hearing here was not a "critical stage" to which a right to counsel attaches.
 
 F. Alleged Errors in Sentencing
 
 25
 The district court's interpretation of the Sentencing Guidelines is reviewed de novo. United States v. James, 957 F.2d 679, 680 (9th Cir.1992). The legality of a defendant's sentence is also reviewed de novo. United States v. Hahn, 960 F.2d 903, 907 (9th Cir.1992). Factual findings underlying the district court's sentencing decisions are reviewed for clear error. United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992).
 
 1. Enhancement for Defendant's Use of Force
 
 26
 Scott argues that his sentence was unconstitutional because the district court considered Scott's use of force in accomplishing the seven counts of aggravated sexual abuse, enhancing Scott's sentence by four levels, even though use of force was not an element of the offenses for which he was convicted. Scott incorrectly assumes that a defendant's sentence cannot be enhanced for conduct for which he was not formally charged and convicted. In McMillan v. Pennsylvania, 477 U.S. 79 (1986), the Supreme Court rejected a claim similar to the one Scott raises here. The Court clarified that Due Process is not violated when a state chooses to treat visible possession of a firearm as a sentencing consideration rather than an element of a particular offense. Justice Rehnquist wrote:
 
 
 27
 Sentencing courts necessarily consider the circumstances of an offense in selecting the appropriate punishment, and we have consistently approved sentencing schemes that mandate consideration of facts related to the crime without suggesting that those facts must be proved beyond a reasonable doubt.
 
 
 28
 Id. at 92 (citation omitted).
 
 
 29
 Scott's suggestion that Congress did not authorize consideration of the use of force in sentencing a defendant convicted on a criminal sexual abuse offense is meritless. The Sentencing Guidelines clearly provide that § 2A3.1 is the applicable guideline section for criminal sexual abuse offenses under 18 U.S.C. § 2241. See U.S.S.G. § 2A3.4(c)(1). Section 2A3.1(b)(1) then provides, "If the offense was committed by the means set forth in 18 U.S.C. § 2241(a) or (b) (including, but not limited to, the use or display of any dangerous weapon), increase by 4 levels." U.S.S.G. § 2A3.1(b)(1). Pursuant to this guideline, the district court correctly enhanced Scott's offense level by four. The use of force was part of the circumstances surrounding commission of the offenses for which Scott was convicted. It is of no moment that the aggravated sexual abuse offenses for which Scott was charged and convicted did not include an element involving the use of force.
 
 
 30
 2. Enhancement Under U.S.S.G. § 2A3.1(b)(4)(C) for Victim's Emotional or Psychological Harm
 
 
 31
 Scott contests the district court's three level enhancement of his sentence under U.S.S.G. § 2A3.1(b)(4)(C) after the district court found that the victim suffered psychological and emotional harm. Scott contends that psychological harm alone does not qualify as "serious bodily injury" under § 2A3.1(b)(4)(C), and that the victim's psychological injuries were already taken into account by the custodial relationship enhancement under § 2A3.1(b)(3). We reject these claims.
 
 
 32
 The Guidelines clearly provide that psychological injuries alone qualify as a type of bodily injury under § 2A3.1(b)(4)(C). That section provides: "(A) If the victim sustained permanent or life threatening bodily injury, increase by 4 levels; (B) if the victim sustained serious bodily injury, increase by 2 levels; or (C) if the degree of injury is between that specified in subdivisions (A) and (B), increase by 3 levels." U.S.S.G. § 2A3.1(b)(4)(C). The Commentary to § 2A3.1 provides that the terms "permanent or life-threatening bodily injury" and "serious bodily injury" are "defined in the Commentary to § 1B1.1 (Application Instructions)." U.S.S.G. § 2A3.1, comment. (n. 1). The definition of both terms includes psychological harm as a type of cognizable injury. See U.S.S.G. § 1B1.1, comment. (n.1(h)) (defining "Permanent or life threatening bodily injury" as including "loss or substantial impairment of a bodily member, organ, or mental faculty that is likely to be permanent"); U.S.S.G. § 1B1.1, comment. (n.1(j)) (defining "Serious bodily injury" as including "impairment of a function of a bodily member, organ, or mental faculty").
 
 
 33
 Further, the fact that the victim's psychological harm is taken into account by the custodial relationship enhancement is immaterial for purposes of whether the bodily injury enhancement is appropriate. Scott's argument incorrectly conflates the two separate bases for sentence enhancement under §§ 2A3.1(b)(3) and (4). The district court thus correctly applied the Sentencing Guidelines, and the court's finding that the victim suffered significant psychological harm was not clearly erroneous.
 
 3. Rule 32
 
 34
 We further reject Scott's claim that the district court failed to make necessary findings under Fed.R.Crim.P. 32. Scott points to a comment made by his counsel just prior to sentencing which stated that counsel "seriously questioned" whether the victim actually suffered significant mental and physical damage since he saw the victim and her mother acting with "a sense of joviality" during breaks in the trial. The record reveals that the district court adequately complied with Rule 32, adopting the findings in the Presentence Report as to the victim's psychological harm. Here, as in United States v. Rigby, 896 F.2d 392 (9th Cir.1990), the record of the sentencing hearing "reflects no confusion on anyone's part as to what the district court decided." Id. at 394.
 
 
 35
 4. Applicability of the Sentencing Guidelines
 
 
 36
 We also reject Scott's argument that the Sentencing Guidelines do not apply to convictions under 18 U.S.C. § 2241(c). There is no indication that Congress intended to exempt § 2241(c) from the purview of the Sentencing Guidelines. In fact, the drafters of the Sentencing Guidelines explicitly provided for § 2241(c) violations, noting: "Any criminal sexual abuse with a child less than twelve years of age, regardless of 'consent,' is governed by § 2A3.1" U.S.S.G. § 2A3.1, comment. (backg'd). Section 2A3.1 then provides a four level enhancement if the victim had not attained the age of twelve years. See U.S.S.G. § 2A3.1(b)(2). Further, courts, including this circuit, have affirmed sentences imposed under the Sentencing Guidelines for those convicted under § 2241(c). See United States v. Ransom, 942 F.2d 775, 778 (10th Cir.1991) (affirming sentence imposed under U.S.S.G. § 2A3.1 for conviction under 18 U.S.C. § 2241(c)). Accord United States v. Castro-Romero, 964 F.2d 942, 944 (9th Cir.1992); United States v. James, 957 F.2d 679, 680 (9th Cir.1992); United States v. Balfany, 965 F.2d 575, 584 (8th Cir.1992).
 
 5. Misstatement in Sentencing Memorandum
 
 37
 Finally, Scott contends that this court must vacate Scott's sentence due to a statement in the district court's sentencing memorandum which refers to a nonexistent plea agreement. While the statement was inaccurate and inapplicable, the mistake is merely a word processing or clerical error that had no substantive effect on Scott's sentence. We order that the mistake be corrected in accordance with Rule 36, which provides: "Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders." Fed.R.Crim.P. 36. Since the error was harmless in that it "does not affect substantial rights," Fed.R.Crim.P. 52(a), we reject Scott's claim that the typographical error requires that his sentence be vacated.
 
 F. "Final Issue" on Appeal
 
 38
 In his brief, Scott attempted to reserve the right to supplement his arguments on appeal if the Supreme Court were to issue its opinion in United States v. Hadley, 918 F.2d 848 (9th Cir.1990), cert. granted, 112 S.Ct. 1261 (1992). Scott called this matter his "final issue" on appeal. The writ of certiorari was dismissed as improvidently granted on November 16, 1992. See Hadley v. United States, 113 S.Ct. 486 (1992). Scott's "final issue" was thereby rendered moot.
 
 
 39
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The district court gave the following instruction at the government's request: "You are instructed that voluntary intoxication is not a defense to the crime of aggravated sexual abuse."